THE STATE OF WASHINGTON, *Respondent,* v. RICHARD C. WERRY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. JERRY ROY CLINE, *Appellant.*

*James A. Alfieri,* for appellant Werry.

*Howard V. Doherty,* for appellant Cline (appointed counsel for appeal).

*S. Brooke Taylor, Prosecuting Attorney,* and *Theodore E. Ripley, Deputy,* for respondent.

ARMSTRONG, J.—The defendants were convicted by a jury of possession with intent to sell the dangerous drug marijuana and possession of the dangerous drug LSD. They received sentences of 3 to 10 years on the marijuana charge and a maximum term of 10 years on the LSD charge. Defendants appeal from their convictions and sentences.

The charging portions of the information provide:

### COUNT I
That they, the said Richard C. Werry and Jerry Roy Cline, Defendants, in the County of Clallam, State of Washington, on or about the 8th day of August, 1970 did then and there have in their possession and at their residence and under their control and supervision the drug marijuana also known as cannabis, of the amount in excess of 40 grams, which according to RCW 69.40.070 Amended, is evidence of Possession with Intent to Sell.

### COUNT II
That they, the said Richard C. Werry and Jerry Roy Cline, Defendants, in the County of Clallam, State of Washington, on or about the 8th day of August, 1970 did then and there have in their possession and at their residence and under their control and supervision the dangerous drug, Lysergic Acid, also known as LSD.

The assignments of error generally raise the following issues: (1) whether the counts were inconsistent and the court should have granted the motion to elect between them; (2) whether defendant Werry should have been advised of his constitutional rights before he was questioned at the time of service of the search warrant; (3) whether there was sufficient evidence to convict either defendant of possession on the theory that there was only a passing control which is only a momentary handling of the drugs; (4) whether the court's instructions failed to present an essential element of defendant Cline's case, the passing control theory, and thereby denied him the right to thoroughly argue to the jury his theory of the case.

Looking to the evidence in this case, we find that defendant Werry was the renter of an old house in which defendant Cline and other young people visited. Cline kept some clothes there and stayed for as much as a week at a time. The house was a focal point for youthful activities that had aroused the suspicions of the police.

Shortly before the raid, a Kenneth Lee Gingell came to the house. He proudly displayed a paper sack and announced that he had "scored" in Seattle and had some real good dope. The sack contained numerous plastic bags containing an amount of marijuana substantially in excess of 40 grams and a plastic bag containing about 55 pills. A laboratory testing of a random sampling revealed the pills to be lysergic acid, commonly known as LSD. Cline testified that the boys at the house viewed the contents and Werry asked Gingell to remove the sack from the house.

Werry and another young man then left by the front door but Werry immediately opened the door to tell Cline and Gingell that there was a "cop car" outside. Werry then closed the door and met the police outside the house. Cline grabbed the sack and ran to the back door of the house, meaning to get rid of the drugs. When he saw a policeman coming up the back porch steps, he moved a few steps to his right and threw the sack through a bathroom door. It landed under the bathtub. The officers verified the fact that Cline had the sack in his hand "for a fleeting second and got rid of it."

### Were the Charges or the Sentences Inconsistent?

Both defendants contend that the charges of possession of marijuana and possession of LSD are inconsistent and the trial court erred in denying their motion to require the state to elect between the two counts. They argue that count 1 describes a crime based upon RCW 69.40.070, which relates solely to possession of marijuana, and count 2 describes a crime based upon RCW 69.40.075, which involves marijuana plus the possession of some other dangerous drug.

We are setting forth in the margin the relevant portions of the two statutes relied upon by defendants.[1] To illustrate the defendants' contentions and provide a basis for their resolution we are setting forth, side by side, the controlling portions of the challenged statutes:

RCW 69.40.070

Whoever violates any provision of chapter 69.40 RCW, and *said violation solely involves the drug cannabis, commonly known as marihuana,* shall, upon conviction, be fined and imprisoned as herein provided:

RCW 69.40.075

Whoever violates any provision of chapter 69.40 RCW, *except when such violation involves only* the drug cannabis, shall, upon conviction, be fined and imprisoned as herein provided:

(Italics ours.)

■ An analysis of the two statutes reveals that they do not define the crimes—they merely prescribe the penalties

---

[1] RCW 69.40.070 [Repealed in 1971] reads as follows:

Whoever violates any provision of chapter 69.40 RCW, and said violation solely involves the drug cannabis, commonly known as marihuana, shall, upon conviction, be fined and imprisoned as herein provided:

(1) For the first offense, the offender shall be guilty of a misdemeanor, and punishable by a fine not exceeding five hundred dollars or by imprisonment in the county jail, not exceeding six months, or by both such fine and imprisonment;

. . .

(5) Except as provided in subsection (4) of this section, for any sale of cannabis or for possession with intent to sell, the offender shall be guilty of a felony and shall be fined not more than five thousand dollars and be imprisoned in the state penitentiary not less than three nor more than ten years. In any prosecution under this section, proof that a person unlawfully possessed in excess of forty grams of cannabis shall be prima facie evidence that possession was with intent to sell.

RCW 69.40.075 [Repealed in 1971] reads as follows:

Whoever violates any provision of chapter 69.40 RCW, except when such violation involves only the drug cannabis, shall, upon conviction, be fined and imprisoned as herein provided:

(1) The offender shall be guilty of a felony, and punishable by a fine not exceeding five thousand dollars or by imprisonment in the state penitentiary not exceeding ten years, or by both such fine and imprisonment;

to be imposed for violations of chapter 69.40. *See State v. Boyer*, 4 Wn. App. 73, 480 P.2d 257 (1971). Since each statute provides a penalty for anyone who violates the provisions of chapter 69.40, we must analyze the violation provisions of that chapter.

Turning to the violation provisions of chapter 69.40, we find that section 69.40.060 lists a large number of substances classified as dangerous drugs, including marijuana and LSD. RCW 69.40.061 provides that "It shall be unlawful for any person to possess any of the drugs described in RCW 69.40.060". It is therefore unlawful to possess marijuana and LSD.

Defendants seek to limit consideration to the two penalty statutes. As we have pointed out, to ascertain legislative intent, we must consider the two statutes that create the crime, as well as the two penalty statutes. We will, therefore, read the four statutes as constituting one law in an attempt to arrive at the total legislative plan, maintaining the integrity of each statute. *See Beach v. Board of Adjustment*, 73 Wn.2d 343, 438 P.2d 617 (1968).

To avoid confusion in future cases, it is necessary to consider the brief history of the four statutes in question. The relevant sections of chapter 69.40 were created by the Laws of 1969, Extraordinary Session and repealed by the Laws of 1971, Extraordinary Session. All but two sections of this chapter, which do not relate to this case, were repealed and replaced by chapter 69.50, entitled Uniform Controlled Substances Act.

Defendants have relied solely upon the penalty statutes (RCW 69.40.070 and RCW 69.40.075). When we recognize that these are penalty statutes and we must also consider the statutes creating the crime, we find that we can more effectively analyze the problem by breaking down the defendants' contentions into two categories: (1) Could the prosecutor charge possession of marijuana and LSD in separate counts? We conclude that he could. (2) Could the court impose separate sentences on each count by virtue of

RCW 60.40.070 and RCW 69.40.075? We find no error in sentencing.

■ Considering first the crimes charged, we see that possession of either marijuana or LSD is a crime. They were in the same paper sack that was in Werry's house and that Cline had in his hand. The possession of both drugs arose out of the same incident. Our common law provides, however, that a person can be prosecuted and punished for two or more offenses arising out of a single act when the offenses differ in their elements, that is, whenever each crime has a distinct element not included in the other. *State v. Boyer, supra.* LSD is a different dangerous drug than marijuana. We therefore find that there are different elements in the crimes charged. Counts 1 and 2 were not inconsistent and the trial judge was correct in denying the motion to elect between them.

Turning next to the sentences imposed, we find no inconsistency in the sentencing statutes. In comparing the statutes, we note that the legislature determined that possession of marijuana was a less serious offense than possession of other dangerous drugs unless the amount possessed was substantial enough to constitute prima facie evidence of an intent to sell. Possession of less than 40 grams of marijuana was determined to be a misdemeanor, whereas possession of any amount of the other dangerous drugs was deemed to be a felony. The sole purpose of the differentiation clauses of the statutes was to accomplish that objective. It was proper for the court to utilize RCW 69.40.070 in imposing sentence for the possession of marijuana and RCW 69.40.075 in sentencing for possession of LSD. It would have been appropriate to impose separate sentences in accordance with RCW 69.40.075 for any number of dangerous drugs, other than marijuana, which were charged in separate counts and proved by the evidence.

THE QUESTIONS ASKED DEFENDANT WERRY DID
NOT CONSTITUTE CUSTODIAL INTERROGATION.

Immediately prior to the raid the defendant Werry and a

friend left the house by way of the front door. A police officer stopped them to serve a search warrant. The officer inquired as to which man was Mr. Werry. Defendant identified himself. The officer then asked if he was the renter and Werry acknowledged that he was. When Werry identified himself the search warrant was served on him. During the questioning defendant was not advised of his constitutional rights. Later he was taken into the house and searched. The arrest followed the finding of the sack of drugs.

█ Defendant Werry contends that this was custodial interrogation in that he was deprived of his freedom in a significant way. If a person is taken into custody or otherwise deprived of his freedom of action in any significant way he must be advised of his constitutional rights before he is questioned. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

We recognize that Werry was temporarily detained for the purpose of serving a search warrant and for investigation. We do not consider that *Miranda* requires a prefatory warning with all noncoercive questioning conducted in the course of a routine investigation. The questions asked were necessary to ascertain whether Werry was the subject described in the search warrant. At the time he was stopped the police officer could make no valid accusation against him and thus the process had not shifted from investigatory to accusatory. We therefore conclude that defendant was not subjected to custodial interrogation and it was not necessary to warn him of his constitutional rights. *State v. Gray,* 3 Wn. App. 146, 473 P.2d 189 (1970).

### Was Possession Established or Mere Passing Control?

Both defendants argue that possession was not established because the brief contact with the drugs amounted only to a passing control and the evidence did not establish possession. Defendant Cline fortified this contention with a proposed instruction and excepted to the court's refusal to

instruct on the theory of a brief and passing control. We find that a prima facie case of possession of dangerous drugs was established and the theory of passing control was not in issue.

■ We shall first consider the law relating to possession of narcotic drugs. Possession of narcotic drugs may be either actual or constructive. Actual possession is proved when the drugs are found to be in the actual, physical custody of the person charged with possession. Constructive possession is proved when the person charged with possession has dominion and control over either the drugs or the premises upon which the drugs were found. *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969).

Once possession of a narcotic drug has been established, the burden shifts to the defendant to explain away the possession as unwitting, lawful or otherwise excusable. *State v. Morris*, 70 Wn.2d 27, 422 P.2d 27 (1966).

Citing *State v. Callahan, supra* and *United States v. Landry*, 257 F.2d 425 (7th Cir. 1958), defendants argue that possession was not established and that at most there was but a passing control. We agree that passing control, such as momentarily handling the drugs, would not be sufficient evidence to constitute a prima facie case of possession. *See United States v. Landry, supra.* In support of this contention defendant Cline submitted the following instruction:

> It is not enough that the defendants or either of them might have been in close proximity to the drugs or that either of them might have earlier momentarily handled them with a brief and passing control.

This is a correct statement of the law and in an appropriate case the theory of passing control should be submitted to the jury. We find no error in refusing the instruction under the facts of this case.

Directing our attention to the evidence, we see that Werry was the renter of the premises and he knew the drugs were in the house. The jury was at liberty to disbelieve the testimony of defendant Cline that Werry asked

Gingell to remove the sack from the house. A prima facie case of constructive possession was proven as to Werry.

■ As to defendant Cline, the evidence was undisputed that when he seized the bag of drugs he intended to get rid of it, or secrete it from the police. This was not the passing control referred to in *State v. Callahan, supra.* When Cline threw the drugs under the bathtub he did not terminate his control. The police terminated his control when they found the drugs. An example of passing control, which is only a momentary handling, would be a casual and brief inspection of the bag of drugs by someone who was not in actual or constructive possession of the drugs. A prima facie case of actual possession was proven as to Cline. He was not deprived of any proven theory of defense by the court's failure to give his proposed instruction on momentary handling with a brief and passing control.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.