[No. 26150-2-II. Division Two. July 20, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT D. SUMMERS, *Appellant*.

374

*Patricia A. Pethick*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *Michael L. Sommerfeld, Deputy*, for respondent.

HOUGHTON, J. — Robert D. Summers appeals his conviction of unlawful possession of a firearm in the first degree, based upon his constructive possession of a firearm found under a pillow on the only bed in the basement where he lived. He argues that (1) the information was defective because it failed to allege the nonstatutory element of knowledge; (2) the "to convict" instruction was constitution-

ally flawed because it failed to require the jury to find knowledge; (3) his trial counsel was ineffective for proposing the faulty "to convict" instruction; (4) the trial court erred in refusing to give two instructions on passing control; (5) the evidence was insufficient; and (6) the trial court miscalculated his offender score. We affirm the conviction, but vacate the sentence and remand for resentencing.

## FACTS

Summers has a prior burglary conviction and is thus prohibited from possessing a firearm. On March 2, 2000, the police went to Summers's residence to investigate a complaint about a possible methamphetamine lab. They had previously determined that Summers had violated his parole, so they also intended to arrest him.

When they arrived, Summers was not home, but he soon arrived. The house had a basement that was accessible only from the outside. When Summers arrived, the police arrested him for his parole violation and read him his *Miranda*[1] rights. Summers waived these rights and admitted that he lived in the basement.[2]

The police asked Summers about a methamphetamine lab. Summers denied that there was a methamphetamine lab in the basement, but he admitted there may be drug paraphernalia and that there was a firearm under the pillow on his bed in the basement. Summers said the firearm belonged to a friend, but he could not remember the friend's name. He said it might have his fingerprints on it because he had handled it in the past.

The police obtained a search warrant, searched the basement, and found the firearm under the pillow on the only bed in the basement, a twin bed. There were no other sleeping accommodations in the basement. The firearm was loaded and had a bullet in the chamber.

Because Summers was prohibited from possessing a firearm, the State charged him with unlawful possession of a firearm in the first degree. The information stated that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The house belonged to his mother.

Summers had "unlawfully and feloniously" possessed a firearm, but it did not specifically allege that Summers had knowingly possessed the firearm. Summers did not challenge the information until this appeal.

At trial, two officers testified to the facts above. Summers offered one witness, James Matthews. Matthews testified that he and his girl friend had been living with Summers in the basement until March 2, 2000. He had been friends with Summers for over 10 years. He testified that the firearm the police had found belonged to him. Matthews said Summers had not known about the firearm until he told him about it moments before Summers arrived at the house the day of his arrest. Matthews testified that he normally kept the firearm on his person, but he had stashed it earlier that day. At one point, Matthews testified that he had placed it under the pillow but later testified that he had put it under the mattress.

The trial court gave Summers's proposed "to convict" instruction that did not require the State to prove knowledge, but it refused to give two other instructions defining "passing control."

The jury found Summers guilty as charged. At sentencing, the State argued that Summers had an offender score of four, based upon his juvenile convictions. The State argued that the recent amendment to the Sentencing Reform Act of 1981, LAWS OF 2000, ch. 26, § 2, allowed the trial court to consider these convictions. Defense counsel argued that under the reasoning of *State v. Cruz*,[3] several of these convictions had washed out. The trial court agreed with the State and sentenced Summers to 42 months, based upon an offender score of four. Summers appeals.

## ANALYSIS

### The Information

Summers first contends that the information is in-

---

[3] *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999).

sufficient because it did not allege that he knowingly possessed the firearm. After Summers was convicted, our Supreme Court held that knowledge was a nonstatutory element of unlawful possession of a firearm. *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000).

■ When a defendant raises an argument that a charging document is missing an essential element after the State rests, we review that charging document under a liberal standard of review. *State v. Kjorsvik*, 117 Wn.2d 93, 105, 812 P.2d 86 (1991); *State v. Phillips*, 98 Wn. App. 936, 940-42, 991 P.2d 1195 (2000).[4] Under this liberal standard of review, we hold that the charging document is sufficient if (1) the necessary elements appear in any form or, by fair construction, can be found in the charging document and (2) the defendant cannot show he or she was prejudiced by the inartfully worded charging document. *Kjorsvik*, 117 Wn.2d at 105-06.

■ Here, Summers has raised this argument for the first time on appeal, invoking this more lenient *Kjorsvik* standard. The information provided in part that Summers "did unlawfully and feloniously own, have in his possession, or under his control a firearm." Clerk's Papers at 1. In *State v. Krajeski*, 104 Wn. App. 377, 386, 16 P.3d 69 (2001), we held that identical language, when tested under the more lenient standard, was sufficient to apprise the defendant of the knowledge element. And, like the defendant in *Krajeski*, Summers has admitted he knew the firearm was in his basement, and he has not attempted to prove prejudice. Thus, his argument fails.

### "To Convict" Instruction and Invited Error

Summers next contends that because the "to convict" instruction did not require the jury to find that he had knowledge of the firearm, we must reverse his conviction.

---

[4] Although *Kjorsvik* discussed only when a challenge was raised after the verdict, *Phillips* ruled that courts should apply the liberal standard of review after the State has lost its ability to amend the charge to correct the defect because otherwise it would encourage "sandbagging." *Phillips*, 98 Wn. App. at 941-42.

Under the current case law in Washington, when a trial court fails to include an essential element in a "to convict" instruction, it is a manifest constitutional error that requires automatic reversal. *State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997).[5] As noted, *Anderson* held that knowledge is an element of unlawful possession of a firearm. *Anderson*, 141 Wn.2d at 366. Here, the "to convict" instruction did not require the jury to find that Summers had knowledge of the firearm. Nevertheless, because of the invited error doctrine, Summers's argument fails.

■ When a defendant proposes an instruction that is identical to the instruction the trial court gives, the invited error doctrine bars an appellate court from reversing the conviction because of an error in that jury instruction. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999). This holds true even if the defendant merely requests a standard *Washington Pattern Jury Instructions: Criminal* instruction approved by the courts. *Studd*, 137 Wn.2d at 548. In *Studd*, the defendant[6] challenged the trial court's self defense instruction, which was based upon 11 *Washington Pattern Jury Instructions: Criminal* (WPIC) 16.02 (2d ed. 1994). This instruction misdefined self defense, thus relieving the State of its burden of properly proving beyond a reasonable doubt that the defendant did not act in self defense. The *Studd* Court held that the WPIC instruction was unconstitutional, but nevertheless it affirmed the convictions because the defendant had requested the identical instruction. *Studd*, 137 Wn.2d at 546-47. The Court held that the invited error doctrine was a "strict rule" to be applied in every situation where the defendant's actions at

[5] The United States Supreme Court has recently held that the failure to include an element in the "to convict" instruction is still subject to a harmless error analysis under the due process clause, *see Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), but it remains to be seen whether Washington courts will adopt *Neder* or decide that the Washington Constitution's due process clause provides more protection. *See, e.g.*, *State v. Jones*, 106 Wn. App. 40, 42, 21 P.3d 1172, 1173 (2001) (declining to address this issue).

[6] In *Studd*, there were several defendants, but for simplicity's sake, we will refer to one defendant, Bennett, whose challenges most closely mirror Summers's challenges.

least in part cause the error. *Studd*, 137 Wn.2d at 547.

Here, Summers proposed an instruction identical to the "to convict" instruction the trial court gave. Thus, he invited any error and we need not reverse based upon *Smith*.

## Ineffective Assistance of Counsel

Anticipating that the invited error doctrine applies, Summers next argues that his trial counsel was ineffective for proposing the flawed "to convict" instruction. Our Supreme Court's holding in *Studd*, however, also defeats this claim.

█ Representation is deemed constitutionally sufficient unless (1) considering all the circumstances, the attorney's performance was below objective standards of reasonableness, and (2) with reasonable probability, the outcome would have differed if the attorney had performed adequately. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)), *cert. denied*, 523 U.S. 1008 (1998). We engage a strong presumption that a defendant received effective representation. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996). And the defendant must show that there were no legitimate strategic or tactical rationales for the challenged attorney conduct. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

In *Studd*, the defendant also claimed that his attorney was ineffective for proposing a flawed self defense instruction. At the time of trial, however, case law held that the proposed self defense instruction was constitutional. Thus, our Supreme Court rejected this claim because "[trial] counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned WPIC 16.02." *Studd*, 137 Wn.2d at 551.

█ Here, prior to the Supreme Court's decision in *Anderson*, the appellate courts had unanimously held that knowledge was not an element of unlawful possession of a firearm. *See State v. May*, 100 Wn. App. 478, 481-82, 997

P.2d 956, *review denied*, 142 Wn.2d 1004 (2000); *State v. Anderson*, 94 Wn. App. 151, 155, 971 P.2d 585 (1999), *rev'd*, 141 Wn.2d 357, 5 P.3d 1247 (2000); *see also State v. Semakula*, 88 Wn. App. 719, 726-27, 946 P.2d 795 (1997) (approving an unwitting possession instruction), *review denied*, 134 Wn.2d 1022 (1998). These cases were all decided before Summers was tried. The Supreme Court's decision in *Anderson* was not released until months later. Thus, trial counsel can hardly be found to fall below acceptable standards by requesting an instruction based upon a WPIC instruction appellate courts had repeatedly and unanimously approved. Because trial counsel's performance was not deficient, we need not address whether Summers was prejudiced.

Proposed Jury Instructions on Passing Control

The trial court gave the standard instruction, based upon the WPIC, to define possession as actual or constructive. The trial court refused to give two of Summers's proposed instructions that further defined possession, which Summers argues was error. Proposed Instruction No. 4 provided, "Possession entails actual control, not a passing control which is only a momentary handling. If in considering the evidence you find that the control exercised by the defendant over the alleged firearm, if any, was passing or momentary only, then you must find the defendant not guilty." Clerk's Papers at 16. Proposed Instruction No. 5 provided, "Fleeting, momentary or temporary possession of a firearm by a felon is not unlawful." Clerk's Papers at 17. These instructions are based upon *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969).[7] To understand why the trial court properly refused to give these instructions, we explore the laws on possession, the holding in *Callahan*,

---

[7] *Callahan* and the cases that interpret it all concern possession of controlled substances, rather than firearms. The laws of possession for controlled substances and firearms, however, are practically identical, *compare* WPIC 50.03 (controlled substances) *with* WPIC 133.52 (firearm), and courts often consider the law of possession for controlled substances to define possession for firearms. *See, e.g., State v. Simonson*, 91 Wn. App. 874, 881 & nn.12-13, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016 (1999).

and how its progeny have interpreted that case.

Possession may be actual or constructive. *Callahan*, 77 Wn.2d at 29. A person has actual possession when he or she has physical custody of the item. *Callahan*, 77 Wn.2d at 29. A person has constructive possession when he or she has dominion and control over the item. *Callahan*, 77 Wn.2d at 29. This dominion and control need not be exclusive. *See State v. Tadeo-Mares*, 86 Wn. App. 813, 816, 939 P.2d 220 (1997). Courts determine whether a person has dominion and control over an item by considering the totality of the circumstances. *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977). When a person has dominion and control over a premises, it creates a rebuttable presumption that the person has dominion and control over items on the premises. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996); *Tadeo-Mares*, 86 Wn. App. at 816; *see also Partin*, 88 Wn.2d at 906-07; *Callahan*, 77 Wn.2d at 30-31.

In *Callahan*, our Supreme Court considered whether evidence was sufficient to prove that the defendant had either actual or constructive possession of drugs found at a residence. The defendant did not have dominion and control over the residence and another person claimed ownership of the drugs. The defendant had been at the house for two or three days, some of his personal belonging were at the house, he was sitting near the drugs when the police discovered them, and he admitted that he had handled them earlier that day.

The Supreme Court first noted that because the defendant was not in physical custody of the drugs, the only evidence to support actual possession was the defendant's admission that he had handled the drugs earlier. *Callahan*, 77 Wn.2d at 29. The Supreme Court held that this earlier handling was only momentary, which amounted to passing control. *Callahan*, 77 Wn.2d at 29. Passing control was not actual control and thus did not amount to possession. *Callahan*, 77 Wn.2d at 29.

Next, the Supreme Court considered constructive possession. It first distinguished a long line of cases on possession

by noting that, unlike in those other cases, the defendant here did not have dominion and control over the premises. *Callahan*, 77 Wn.2d at 30-31. It then held that when another person claims ownership of the drugs, evidence that a defendant who did not have dominion and control over the premises, who had personal items at the premises, who had been at the premises for a few days, who was found in close proximity to the drugs, and who had handled the drugs earlier in the day was insufficient to prove that the defendant had constructive possession over the drugs. *Callahan*, 77 Wn.2d at 31.

Later cases have refined the meaning of passing control and how it relates to possession. Two cases demonstrate that passing control is not strictly a temporal concept. In the first case, *State v. Werry*, 6 Wn. App. 540, 494 P.2d 1002 (1972), one defendant, who was a guest at a house, grabbed a bag of drugs and tried to hide it when the police arrived at the house. We held that this type of momentary control, which only the police terminated, was not passing control. *Werry*, 6 Wn. App. at 548. "[P]assing control . . . would be a casual and brief inspection of the bag of drugs by someone who was not in actual or constructive possession of the drugs." *Werry*, 6 Wn. App. at 548. Thus, we held that the trial court properly refused to give the defendant's proposed instruction on passing control. *Werry*, 6 Wn. App. at 547-48.

In the second case, *State v. Bowman*, 8 Wn. App. 148, 504 P.2d 1148 (1972), the defendant, a houseguest, was seen sliding drugs onto the floor when the police arrived. Again we held the trial court properly refused to give the defendant's proposed instruction on passing control. *Bowman*, 8 Wn. App. at 152-53. We reasoned that police action terminated the defendant's possession and, thus, it was not passing control as described in *Callahan*. *Bowman*, 8 Wn. App. at 153.

From these two cases, it is clear that all momentary possessions do not equal passing control. Instead, we must consider the nature of the possession and why it terminated.

*State v. Staley*, 123 Wn.2d 794, 872 P.2d 502 (1994), also refined *Callahan*. There our Supreme Court first considered *Callahan*'s analysis of constructive possession and stated that *Callahan* held that proof of mere proximity and an earlier momentary handling did not show that a person had dominion and control over an item when another person claimed ownership. *Staley*, 123 Wn.2d at 800-01.

Next, the Supreme Court considered *Callahan*'s analysis of actual control, stating that when a person does not have physical possession, evidence that he or she had momentarily handled the item earlier, without more, was insufficient to prove that that person had actual possession. *Staley*, 123 Wn.2d at 801. The Supreme Court held that to "possess" means " 'to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature.' " *Staley*, 123 Wn.2d at 801 (quoting *United States v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958)). Thus, we focus not on the length of the possession but on the quality and nature of that possession. *Staley*, 123 Wn.2d at 801. The length of time is but a factor in determining whether it was actual or passing possession. *Staley*, 123 Wn.2d at 801. A defendant's momentary handling of an item, along with other sufficient indicia of control, can support a finding of possession because the totality of the circumstances determines possession. *Staley*, 123 Wn.2d at 802 (citing *Partin*, 88 Wn.2d at 906).

Finally, the Supreme Court unequivocally held that momentary handling of contraband is not lawful. *Staley*, 123 Wn.2d at 802. Such evidence is relevant to whether the defendant actually possessed the item. *Staley*, 123 Wn.2d at 802.

Based upon the analysis of *Callahan* in *Staley*, *Bowman*, and *Werry*, the following rules apply in possession cases. Possession is more than passing control. Momentary handling, without more, is insufficient to prove possession. But evidence of momentary handling, when combined with other evidence, such as dominion and control of the pre-

mises, or a motive to hide the item from police, is sufficient to prove possession. Finally, even passing control of contraband is not legal; it is merely insufficient to prove possession.

 Because of the law on passing control, the trial court here properly refused to give Summers's proposed instructions on the issue. A defendant is not entitled to jury instructions that misstate the law. *Staley*, 123 Wn.2d at 803. The second sentence of Proposed Instruction No. 4 provided, "If in considering the evidence you find that the control exercised by the defendant over the alleged firearm, if any, was passing *or momentary* only, then you must find the defendant not guilty[.]" Clerk's Papers at 16 (emphasis added). This is an inaccurate statement of the law because *Staley*, *Bowman*, and *Werry* hold that momentary control can amount to actual possession in some circumstances. Based upon this instruction, however, the jury would have been required to conclude that if Summers had only momentary control of the firearm, it had to find him not guilty. This is not the law.

Similarly, the trial court properly refused to give Proposed Instruction No. 5, which provided, "Fleeting, momentary or temporary possession of a firearm by a felon is not unlawful." Clerk's Papers at 17. The case law is clear that brief actual possession is illegal. What *Callahan* and its progeny hold is that passing control does not amount to actual control. Momentary possession is not an affirmative defense. Thus, the proposed instruction misstates the law.[8]

 Summers argues these instructions are accurate because they are based upon language in *Callahan*. Although these instructions are based upon language in *Callahan*, this case is a good example of why language from appellate court decisions should not necessarily be incorporated into jury instructions. *See State v. Williams*, 28 Wn.

---

[8] Because the proposed instructions misstated the law, we need not address whether a trial court would be required to give an instruction on passing control that accurately stated the law. We also need not address the State's argument that *Callahan* and its progeny do not apply when a defendant has dominion and control over the premises.

App. 209, 212, 622 P.2d 885, *review denied*, 95 Wn.2d 1024 (1981) (citing *Turner v. City of Tacoma*, 72 Wn.2d 1029, 1034, 435 P.2d 927 (1967)). Such language may sound argumentative or may even distort the law if taken out of context. *See Turner*, 72 Wn.2d at 1034. This is exactly what happened here.

## Sufficiency of the Evidence

Summers further contends that there was insufficient evidence to support his conviction, arguing that he was not present when the police discovered the firearm, he shared the basement with two other people, and one of those persons asserted ownership of the firearm.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). In determining whether the necessary quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt but only that substantial evidence supports the State's case. *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107 (2000), *review denied*, 141 Wn.2d 1023 (2000). Substantial evidence is evidence that "would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972). Substantial evidence cannot be based upon guess, speculation, or conjecture. *Hutton*, 7 Wn. App. at 728.

Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We defer to the trier of

fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992). The trier of fact is free to reject even uncontested testimony as not credible as long as it does not do so arbitrarily. *State v. Tocki*, 32 Wn. App. 457, 462, 648 P.2d 99, *review denied*, 98 Wn.2d 1004 (1982).

 As noted, possession may be actual or constructive and constructive possession need not be exclusive. *Tadeo-Mares*, 86 Wn. App. at 816. When a defendant has dominion and control over a premises, there is a rebuttable presumption that he or she has dominion and control over items in the premises. *Tadeo-Mares*, 86 Wn. App. at 816. Merely that a defendant is not present when contraband is discovered will not make the evidence insufficient.[9] *See State v. Simonson*, 91 Wn. App. 874, 877, 881, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016 (1999). Nor will the fact that someone else owns the item make the evidence insufficient. *State v. Jeffrey*, 77 Wn. App. 222, 223, 227, 889 P.2d 956 (1995).

Here, Summers admits he lived in the basement, which meant he had dominion and control over the premises. This fact alone would allow the jury to infer that Summers had constructive possession of the firearm and defeat his claim of insufficient evidence.

But the evidence also shows he knew about the firearm and had even handled it. Moreover, the jury was free to disbelieve the assertions that the firearm belonged to a friend or that Summers even had roommates. As noted, the jury is free to reject even uncontested testimony as long as it does not reject that testimony arbitrarily. *See Tocki*, 32 Wn. App. at 462. Here, the jury had several reasons to reject

[9] Interestingly, WPIC 133.52 requires that for constructive possession of a firearm, the defendant's dominion and control must allow the defendant to exercise that control immediately. Obviously, in light of common sense and *Simonson*, this does not mean immediately exercise control at the time the police discover the weapon. Despite *Simonson*, defense counsel in the case at bar argued to the jury that it had to find Summers not guilty because he was not at the residence when the police discovered the firearm.

the claims that the firearm belonged to his longtime friend Matthews and that Matthews was a roommate because Summers and Matthews gave inconsistent stories.[10]

First, Summers told the police the firearm belonged to a friend, but he could not remember the friend's name. But at trial the friend turned out to be Summers's friend of more than 10 years who allegedly was living with Summers and had just called Summers moments before to warn him about the firearm. Second, the police testified that the basement contained only one sleeping accommodation, a twin bed. This suggests that Matthews and his girl friend were not living with Summers. Third, Summers told the police that the firearm was under the pillow on his bed, but Matthews testified the firearm was on his own bed. Fourth, Matthews first testified that the firearm was under the pillow, but then he said it was under the mattress. Finally, Matthews said that Summers did not know about the firearm until he told Summers moments before Summers arrived at the basement. Matthews said that he usually kept the firearm on his person but had left it in the basement on that particular occasion because he was visiting his brother in jail. But Summers told the police he had handled the firearm in the past. In light of these two repeatedly inconsistent stories, the jury was free to disbelieve Summers's and Matthews's claim that the firearm belonged to Matthews, not Summers.

## Offender Score

Finally, Summers contends that the trial court erred in calculating his offender score. He asserts that the trial court erred because it counted several convictions he committed when he was under 15 years old and he is now over 23 years old. Summers relies upon former RCW 9.94A.360(4) (1996) and *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999).

---

[10] We do not mean to suggest that inconsistency is required under *Tocki* before a jury may disbelieve uncontested testimony.

Summers is correct. The trial court should not have considered the juvenile convictions for crimes committed before he was 15. *State v. Smith*, 144 Wn.2d 665, 675, 30 P.3d 1245 (2001) (previously washed out juvenile adjudications are not considered in calculating offender score).

The conviction is affirmed, but sentence is vacated and the matter is remanded for resentencing.

ARMSTRONG, C.J., and HUNT, J., concur.

Petition for review granted and case remanded at 145 Wn.2d 1015 (2002).