FILED
COURT OF APPEALS
DIVISION II

2014 DEC 16 AM 8: 34

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44778-9-II |
| Respondent, | |
| v. | |
| HENRY JORDAN BRADY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Henry Jordan Brady guilty of first degree unlawful possession of a firearm. Brady appeals, arguing that (1) the corpus delicti rule precluded admission of his statement to police because there was insufficient independent evidence corroborating the statement; and (2) the State presented insufficient evidence to support the conviction. Because the corpus delicti rule precludes the use of Brady's statements and there is insufficient evidence to support the conviction, we reverse the conviction and remand for dismissal of the charge.

## FACTS

On February 8, 2011, Bremerton police officers responded to a report of a fight and were informed that a white Oldsmobile car was involved. When police officers arrived at the scene, a woman was in the driver's seat of the Oldsmobile and Henry Brady was in a nearby yard. When

police officers tried to talk to Brady, he ran from them, but he was apprehended a few yards away and put into a patrol car.

At the scene, police officers searched the Oldsmobile. In the search, they found Brady's wallet on the back seat and a .40-caliber semi-automatic handgun wrapped in a towel under the front passenger seat.

After the vehicle search, Brady was taken to the Bremerton police station for questioning. At the police station, Detective Robert Davis questioned Brady about the fight and the gun that police officers found in the Oldsmobile. Brady told Davis that he was familiar with the gun because he handled it a few days earlier on February 4.

Brady had a prior conviction of first degree burglary, which made it unlawful for him to possess a firearm. The State charged Brady with the crime of first degree unlawful possession of a firearm from February 4 to February 8, 2011.

Brady made a *Knapstad*[1] motion to dismiss the charge. The trial court granted the motion in part, ruling that the "inference of continued possession from February 4th to February 8th is too attenuated to be reasonable," and "that there's only sufficient information to go to the jury on the evidence of possession on February 4th." Clerk's Papers (CP) at 16-17. In response to the State's attempt to clarify the ruling, the trial court said that a *Knapstad* motion is not "an all-or-nothing motion," that the court "can split the incidents up," and that the trial court agreed with Brady that there is insufficient evidence of possession on February 8 to go to a jury. CP at 16-17. The trial court repeated its ruling, saying that "[t]he Information charges a period of time on or between

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

February 4 and February 8. I can't dismiss the Information. On the other hand, I would not anticipate giving a 'to convict' instruction, in this case, for any date other than February 4."[2] Verbatim Report of Proceedings (VRP) (Nov. 2, 2012) at 2.

The State filed a "Motion in Limine Regarding Relevancy"[3] of the evidence that the police officers recovered from the Oldsmobile on February 8 (Brady's wallet and the gun). Suppl. CP at 102. The trial court ruled that "the evidence of February 8 is relevant to the commission of—the alleged commission of the crime on February 4th." VRP (Nov. 16, 2012) 12.

Before trial, Brady moved to exclude evidence of Brady's wallet and the gun, arguing that the evidence found in the Oldsmobile on February 8 should be excluded because that evidence was not relevant to proving possession on February 4. The State argued that that the evidence from the Oldsmobile was relevant and corroborated Brady's statement that he had handled the gun on February 4. The trial court found that while the evidence of the gun and wallet could confuse the jury about the dates of possession, the evidence would not be excluded because it allowed the State to prove the corpus of the crime. The trial court denied Brady's motion, again ruling that the evidence from the Oldsmobile was "part of the corpus" and relevant to proving possession on February 4. VRP (March 4, 2013) at 55.

---

[2] The State has not appealed the trial court's ruling that there was insufficient evidence of possession on February 8. The only issue at trial, and before this court, was Brady's possession of a firearm on February 4.

[3] While the State titled its motion "Motion in Limine Regarding Relevancy," the trial court said, "[I]t's not a motion. It's a trial brief. . . I am treating it as a brief to me as to why that evidence should be admitted." VRP (Nov. 16, 2012) at 12.

Prior to trial, Brady stipulated to his prior conviction of a serious offense as a predicate for the unlawful possession of a firearm charge. On March 6, 2013, the case went to trial.

At trial, Officer Rodney Rauback testified that he asked Brady about the fight and the Oldsmobile at the scene where the officers responded. At first, Brady denied knowing the driver of the Oldsmobile and claimed that he had never been in the Oldsmobile. But, when police officers asked the driver for permission to search the Oldsmobile, Brady yelled the driver's name and shook his head in a "no" motion. VRP (March 6, 2013) at 85. The driver gave the police officers permission to search. Rauback then asked Brady again if he knew the driver, and Brady said that he actually did know her, but that he had not been in the Oldsmobile. Also, when Rauback confronted Brady about his wallet in the back seat of the Oldsmobile, Brady said that he actually had been in the car earlier that day.

Detective Davis testified that when he interviewed Brady at the Bremerton police station about the gun that police officers found in the Oldsmobile, Davis did not describe the gun or show it to Brady. Despite that, Brady told Davis that he was familiar with the gun, and that it was the same .40-caliber gun that a man named Dillon[4] brought to his home to sell to him a few days earlier on February 4, 2011. At first, Brady said that he did not handle the gun, but then he said that he did handle it and that he wiped off his fingerprints. Officer Jason Vertefeuille testified that although the Bremerton police tested the gun for fingerprints, no fingerprints were found on the gun.

---

[4] "Dillon" is not involved in any proceedings related to this case and has not been otherwise identified.

The trial court instructed the jury only on the charge of first degree unlawful possession of a firearm, which included an instruction on the definition of "possession."[5] The jury found Brady guilty of first degree unlawful possession of a firearm. Brady appeals.

ANALYSIS

Brady alleges that (1) the corpus delicti rule bars his statement because the State did not present independent corroborating evidence of Brady's statement that he handled the gun on February 4 and (2) the State presented insufficient evidence to support the guilty verdict. We agree that the State failed to present corroborating independent evidence to show that Brady handled the firearm on February 4; thus, his statement to police should not have been admitted. Furthermore, without Brady's own statement, there is insufficient evidence to support the charge of first degree unlawful possession of a firearm on February 4.

---

[5] Instruction No. 11 states:

> Possession means having a firearm in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.
>
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
>
> In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the item, whether the defendant had the capacity to exclude others from possession of the item, and whether the defendant had dominion and control over the premises where the item was located. No single one of these factors necessarily controls your decision.

Suppl. CP at 152.

No. 44778-9-II

## A.  CORPUS DELICTI[6]

Brady challenges the sufficiency of the corroborating independent evidence under the corpus delicti rule, alleging that the trial court should have excluded his statement that he handled the firearm on February 4 because there was no independent evidence to corroborate his statement. We agree.

"A defendant's incriminating statement alone is not sufficient to establish that a crime took place." *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006) (footnote omitted). The State must present independent evidence to corroborate that the crime described in the defendant's incriminating statement took place. *Brockob*, 159 Wn.2d at 328.

The corpus delicti rule "tests the sufficiency or adequacy of evidence," independent of the defendant's confession, to corroborate a defendant's incriminating statement. *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010). Under the corpus delicti rule, the State must present sufficient independent evidence corroborating the defendant's confession to support the inference that the crime with which the defendant has been charged has occurred, and the "independent evidence 'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" *Brockob*, 159 Wn.2d at 329 (quoting *State v. Aten*, 130 Wn.2d 640, 660, 927 P.2d 210 (1996)). "The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in the defendant's incriminating statement."

---

[6] "*Corpus delicti*" means "body of the crime." *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996) (quoting 1 MCCORMICK ON EVIDENCE § 145, at 227 (John W. Strong ed., 4th ed. 1992)).

6

*Brockob*, 159 Wn.2d at 328. "Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a "'logical and reasonable inference" of the facts sought to be proved.'" *Brockob*, 159 Wn.2d at 328 (quoting *Aten*, 130 Wn.2d at 656). We view all reasonable inferences from the evidence in the light most favorable to the State and assume the truth of the State's evidence when determining the sufficiency of the independent evidence. *Aten*, 130 Wn.2d at 658.

Ordinarily, proving the identity of the person who committed the crime is not part of the corpus delicti. *State v. Solomon*, 73 Wn. App. 724, 728, 870 P.2d 1019, *review denied*, 124 Wn.2d 1028 (1994). But, some crimes "inherently require proof of identity" to establish the corpus delicti because "the fact that a crime occurred cannot be established without" identifying the person who committed it. *Solomon*, 73 Wn. App. at 728. Unlawful possession of a firearm is among such crimes because firearm possession is not unlawful per se; rather, possession is unlawful only when the possessor has been previously convicted of a serious offense. *State v. Wright*, 76 Wn. App. 811, 817–18, 888 P.2d 1214, *review denied*, 127 Wn.2d 1010 (1995). The corpus delicti rule as applied to unlawful firearm possession, therefore, requires proof connecting the defendant with the firearm possession. *Wright*, 76 Wn. App. at 818. Therefore, here, the State had to present independent evidence to provide prima facie corroboration that Brady possessed the firearm on February 4.

During questioning at the Bremerton police station, Brady told Detective Davis that he handled the gun in his home on February 4 when Dillon offered to sell it to him. Thus, the State

was required to present independent evidence to corroborate Brady's statement that he handled the gun on February 4. The State argued, in a footnote, that the following evidence was independent of Brady's statement and corroborated that statement: on February 8, police officers found Brady's wallet and the gun in the same car, and Brady admitted to having been in that car on February 8. We disagree that this evidence corroborates Brady's statement that he handled the gun on February 4.

Even when the evidence and all reasonable inferences are viewed in the light most favorable to the State, the evidence that police officers found Brady's wallet in the same car that they found the firearm on February 8 is unrelated to Brady's statement that he handled the firearm on February 4. Brady's presence in the Oldsmobile at some point on February 8 is similarly unrelated to his handling the firearm on February 4. The evidence of Brady's wallet and firearm found in the Oldsmobile on February 8 fails to provide prima facie corroboration that Brady handled the firearm on February 4, and the evidence is neither consistent nor inconsistent with Brady's guilt or innocence on the charge of unlawfully possessing a firearm on February 4. At best, the evidence allows an inference that Brady was in possession on February 8. However, we are only addressing the conviction for possession on February 4.

The evidence the State presented is disconnected in time and place, and does not allow a logical or reasonable inference that Brady possessed the firearm on February 4. The State failed to present any independent evidence corroborating Brady's statement that he handled the firearm on February 4. Therefore, the trial court erred in admitting Brady's statement.

B.    SUFFICIENCY OF THE EVIDENCE

Brady alleges that the State did not present sufficient evidence to support the conviction. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict Brady for unlawful possession of a firearm under RCW 9.41.040(1)(a), the State must prove beyond a reasonable doubt that on February 4, Brady knowingly had a firearm in his possession or control and that Brady had a predicate conviction precluding him from possessing or controlling a firearm. RCW 9.41.040(1)(a). Possession can be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). Actual possession means that the defendant had the goods in his personal custody. *Staley*, 123 Wn.2d at 798; *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969) (finding close proximity is not sufficient to show actual possession). To determine whether a defendant had constructive possession of an item, we examine the totality of the circumstances touching on dominion and control. *State v. Summers*, 107 Wn. App. 373, 384, 28 P.3d 780 (2001). Dominion and control over the premises where the item was found creates a

rebuttable inference of dominion and control over the item itself. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). A defendant's "momentary handling of an item, along with other sufficient indicia of control, can support a finding of possession because the totality of the circumstances determines possession." *Summers*, 107 Wn. App. at 386. The focus is "not on the length of the possession but on the quality and nature of that possession." *Summers*, 107 Wn. App. at 386 (citing *Staley*, 123 Wn.2d at 801).

As established above, a defendant may not be convicted based solely on his own statement. Brady's admission to police officers should not have been admitted. Therefore, the question is whether the jury could have found beyond a reasonable doubt that Brady was guilty of unlawfully possessing a firearm on February 4 without Brady's statement to police.

The State presented the following evidence: on February 8, Brady ran from police officers; Brady offered inconsistent statements to police officers about knowing the driver of the Oldsmobile and the handling of the gun; Brady told the driver of the Oldsmobile to not allow police officers to search the Oldsmobile; and on February 8, police officers found a gun wrapped in a towel underneath the front seat and Brady's wallet in the back seat of the Oldsmobile. Other than Brady's own statement, there is no evidence linking the evidence found on February 8 to Brady's possession on February 4. Without Brady's statement, the State presented no evidence that Brady possessed a firearm on February 4. Even taking the inferences in the light most favorable to the State, the State did not present sufficient evidence to allow a jury to find Brady guilty of unlawful possession of the gun on February 4.

No. 44778-9-II

We reverse Brady's conviction, and we remand to the trial court for dismissal of the first degree unlawful possession of a firearm charge.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.

11