[No. 14618-9-III.   Division Three.   July 1, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. LEONEL TADEO-MARES, *Appellant.*

*Philip E. Nino*, for appellant.

*John D. Knodell III, Prosecuting Attorney*, for respondent.

THOMPSON, J. — Leonel Tadeo-Mares challenges the sufficiency of the evidence to support his conviction for possession of a controlled substance with intent to deliver, RCW 69.50.401(a). He argues the State failed to prove he constructively possessed the cocaine. We affirm.

In September and October 1994, Detective David Ponozzo and other members of the Interagency Narcotics Enforcement Team (INET) were investigating drug activity at 512 North Grape, Apartment 7A, in Moses Lake. In addition to keeping the apartment under surveillance, the team used a confidential informant to make controlled drug purchases at the apartment on September 21, 26, 27 and 28, and October 7. On at least three of these dates, Detective Ponozzo worked surveillance and observed an unusual number of people enter the residence, stay for a minute or two, and then leave.

INET obtained a search warrant for the premises, and on the morning of October 7 they entered the apartment, removed three persons (including Mr. Tadeo-Mares), and conducted a search. The apartment was small, measuring

only about 220 square feet. Next to the water heater, the officers found a .22-caliber rifle and ammunition. On top of the refrigerator and in a kitchen drawer, the officers found plastic baggies with the corners removed.[1]

The officers also found photographs in the living area of the apartment. One depicted Mr. Tadeo-Mares. Another showed Jesus Eli Cruz Hernandez, a 14-year-old who was one of the individuals present when the officers arrived. In addition, the officers found a rent receipt for apartment 7A dated October 1, 1994, in the amount of $210.24 received from "Julio Nunguia" and Jesus Eli Cruz Hernandez. A vehicle registration document for a pickup in the name of "Julio Nunguia" matched a vehicle parked outside the apartment. The apartment manager identified Mr. Tadeo-Mares as the "Julio Nungeya" who rented and paid for apartment 7A along with Mr. Hernandez and who had lived there for at least five weeks before the warrant was executed.[2]

In the bathroom, the officers found a plastic medicine bottle containing 16 tied-corner baggies of a white, powdery substance, which proved to be 10.7 grams of uncut cocaine. This amount of cocaine would sell for more than $800 at prevailing prices. At that point, the occupants of the apartment were arrested and searched. In Mr. Hernandez's pockets, officers found three wallets containing a total of $1,119.75. Three $20 bills matched serial numbers of controlled-buy money given to the confidential informant earlier that day. None of the wallets contained identification. A search of Mr. Tadeo-Mares's person revealed nothing, except maybe lint in his pockets.

■■ When sufficiency of the evidence is at issue, the

---

[1]According to one detective, a typical practice when packaging cocaine for sale is to pour cocaine into the corner of the baggie, tie a knot to secure the powder, and cut or tear the baggie just above the knot. The detective testified an individual cocaine user usually would not repackage the drug in this fashion because some of the drug would be lost in the process.

[2]The parties stipulated at trial that Leonel Tadeo-Mares is the defendant's true name.

test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Gentry*, 125 Wn.2d 570, 596-97, 888 P.2d 1105, *cert. denied*, 516 U.S. 843, 116 S. Ct. 131 (1995). All reasonable inferences must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). The elements of a crime may be established by either direct or circumstantial evidence, and one type of evidence is no less valuable than the other. *State v. Thompson*, 88 Wn.2d 13, 16, 558 P.2d 202, *appeal dismissed*, 434 U.S. 898 (1977); *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986).

The evidence establishes that Mr. Tadeo-Mares leased the apartment, shared the rent, and resided there. He was in constructive possession of the premises. *See State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995); *State v. Collins*, 76 Wn. App. 496, 501, 886 P.2d 243, *review denied*, 126 Wn.2d 1016 (1995); *see also State v. Harris*, 14 Wn. App. 414, 417, 542 P.2d 122 (1975) (constructive possession may be joint), *review denied*, 86 Wn.2d 1010 (1976).

However, it is not a crime to have dominion and control over the *premises* where controlled substances are found. *State v. Olivarez*, 63 Wn. App. 484, 486, 820 P.2d 66 (1991). As a Division One panel of this court recently recognized, dominion and control over the premises raises only a rebuttable inference of dominion and control over contraband inside the premises. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). Dominion and control of the premises is only one factor in determining whether a person had constructive possession of drugs. *Id.* at 208.

In another context, this court recently addressed the propriety of a jury instruction that stated in part: "Constructive possession [of a substance] occurs when there is no actual physical possession, but there is dominion and control over the substance *or the premises upon which the substance is found.*" *State v. Ponce*, 79

Wn. App. 651, 653 n.1, 904 P.2d 322 (1995) (emphasis added). In broad language generally approving the instruction, we noted that "[r]ecent cases have established that the State may show that the person charged had dominion and control over the contraband *or* over the premises in which the contraband was found." *Id.* at 654 (citations omitted). However, we later observed that constructive possession "is determined by looking at the totality of the circumstances, including whether the residence is temporary or permanent and whether the defendant had personal knowledge of the presence of the drugs." *Id.* (citation omitted). Because the trial court also had instructed the jury on the law of unwitting possession, we held the jury was required to determine whether the defendant *knew* the cocaine was on the premises, and there was no instructional error. *Id.*

We hold that the *Ponce* reasoning does not apply to this case, in which the issue is sufficiency of the evidence rather than the propriety of jury instructions. *See Cantabrana*, 83 Wn. App. at 208. When, as here, a defendant challenges the sufficiency of the evidence, proof of dominion and control over the premises raises a rebuttable presumption there is dominion and control over the contraband in the premises. *Id.* Therefore, Mr. Tadeo-Mares's dominion and control over apartment 7A raises a rebuttable presumption that he had constructive possession of the cocaine inside the apartment.

Moreover, the evidence of constructive possession in this case is not limited to Mr. Tadeo-Mares's dominion and control over the premises. A rational trier of fact could have inferred Mr. Tadeo-Mares had dominion and control over the 16 baggies of cocaine. The baggies were in the only bathroom of a small apartment where materials frequently used in cocaine packaging were found and where many brief visitors were seen. In light of the totality of the circumstances, the evidence was constitutionally sufficient.

The conviction is affirmed.

SWEENEY, C.J., and KURTZ, J., concur.

Reconsideration denied July 25, 1997.