FILED
COURT OF APPEALS
DIVISION II

2013 DEC 10 AM 9: 54

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 43386-9-II |
| v. | |
| COLIN MITCHELL McCURDY, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Colin McCurdy appeals his convictions of first degree unlawful possession of a firearm (2 counts) and unlawful possession of more than 40 grams of marijuana. He claims that the trial court abused its discretion in finding him competent to stand trial and that the State failed to prove that he possessed the firearms and marijuana. Finding no such errors, we affirm.

## FACTS

Deborah Bays rented out a room in her Sequim home for 30 days in March 2011. The renter, who identified himself as Miles Twitter, paid her $425 in cash. On March 29, Bays received a phone call concerning Twitter. Because she had not seen him since March 21, Bays went into his room to gather his belongings. While doing so, she found 10 to 15 garbage bags of marijuana. She called the police, who obtained a search warrant. While executing the warrant, officers seized 60 pounds of marijuana packed in one pound bags. They also seized shotgun shells, two rifles, ammunition, and some personal papers bearing the name Colin McCurdy.

An officer showed Bays a photograph of McCurdy they had discovered during the search. Bays identified the person in the photograph as Twitter. Bays later explained that only she, her landlord, and Twitter had a key to her house, and no other person had access to Twitter's bedroom. The State subsequently charged McCurdy with two counts of first degree unlawful possession of a firearm and one count of unlawful possession of more than 40 grams of marijuana.

Before trial, defense counsel requested and the trial court ordered a competency evaluation. Carl Redick, a Western State Hospital licensed psychologist, performed the evaluation. He concluded that McCurdy did not have the capacity to assist in his defense, but recommended that trial counsel attempt to work with him. Redick indicated that if McCurdy and counsel could not work together, this inability was an indication of McCurdy's incompetence. The trial court found that this evaluation was ambiguous. McCurdy repeatedly argued that he was competent to stand trial.

During a competency hearing, the trial court explained that based on the evaluation, "it seems pretty clear to me that Mr. McCurdy understands the nature of the proceedings. I think the only issue really was whether he could effectively assist his counsel." Report of Proceedings (RP) (Mar. 7, 2012) at 3. The trial court then asked defense counsel, "Have you found him to be uncooperative in his ability to address the defenses and so on?" RP (Mar. 7, 2012) at 4. Defense counsel responded:

> [W]ell, he and I have not reviewed potential defenses. . . . But as far as the overall relationship, it's pretty good. I met with him yesterday, we didn't have any problems, but I'll certainly defer to my client to -- for him to articulate his position on that since everything seems to reflect that he's capable of doing that.

RP (Mar. 7, 2012) at 4. When the trial court asked McCurdy if he could work with defense counsel, McCurdy responded:

> I certainly do. I welcome the opportunity with open arms, the same open arms I welcomed [prior defense counsel]. And I pray for the mutual commitment to do an earnest, honest, productive and amicable civil relationship between us and I believe that there's -- I believe that will be the case.

RP (Mar. 7, 2012) at 7. The trial court then found McCurdy competent to stand trial.

At this same hearing, McCurdy directly addressed the court, explaining his frustration with prior counsel because of her insistence that he have a competency evaluation. He explained that her insistence resulted in several delays and placed him at risk of being housed in a mental institution and forced to take psychotropic drugs. He described her as a "venomous serpent that was frivolously trying to corral me into either prison or an insane asylum." RP (Mar. 7, 2012) at 8. After the trial court explained to McCurdy that he was not going to the hospital but would remain for trial, McCurdy responded, "And I thank God every day, and by the grace of God and only by the grace of God have I been able to emerge from the putrid situation that I was cast into with [prior defense counsel]." RP (Mar. 7, 2012) at 18. The trial court then told McCurdy to put that situation behind and focus on trial, to which McCurdy responded, "I certainly look forward to doing that." RP (Mar. 7, 2012) at 18.

On the first day of trial, the trial court had several colloquies with McCurdy. McCurdy asked for clarification on whether a muzzle-loader or black powder rifle was a firearm under the firearms statute.[1] He expressed concerns about his speedy trial rights being violated as a result of his competency evaluation. He wanted clarification on whether the search of his residence exceeded the scope of the warrant. He expressed his concern that defense counsel simply did not

---

[1] Apparently it is not under federal law.

3

care about interviewing witnesses and investigating his case. He believed that the trial court had demonstrated bias in a prior hearing and asked the court to recuse itself.

After these discussions, the prosecutor again asked the court to consider whether McCurdy was competent to assist counsel. After defense counsel explained that he and McCurdy had discussed some viable and non-viable defenses, the trial court explained that trial would continue:

> But, number 1, Mr. McCurdy has from day 1 been adamant that he understands what's going on and that he's competent to assist his counsel in the case, he just disagrees with most of what his counsel tells him.
> Secondly, we had a competency determination. That is the rule of this case at this point.
> Third, it is not -- only not unusual but it is actually common for defendants to have no concept of what's important in their case and what isn't. And that I think is the problem that we are laboring under with Mr. McCurdy.

RP (Mar. 7, 2012) at 46-47.

Bays then testified about the events in her home and identified McCurdy as the man who rented from her under the name Miles Twitter. After the jury was excused for the day, McCurdy asked the trial court why the landlord had not testified, believing that he was an essential witness. The trial court explained that each side could call its own witnesses and that Bays had testified that McCurdy was the only other occupant of the residence during the 30-day tenancy. McCurdy then pleaded with the prosecutor to call the landlord "in the name of justice." RP (Apr. 11, 2012) at 119.

On the second day of trial, after the defense rested without calling any witnesses, McCurdy expressed his frustration with not having a defense. The trial court then had an extensive colloquy with McCurdy about his desire to represent himself during closing arguments. McCurdy was frustrated that defense counsel did not present witnesses on his behalf,

4

explaining that he was "sent out to battle without a weapon or a shield." RP (Apr. 12, 2012) at 43. McCurdy eventually relented and agreed to allow defense counsel to finish out the trial.

The jury found McCurdy guilty. During sentencing, the trial court commented on McCurdy's competence:

> Well, the other reason was we did have the competency issue raised before we went to trial, I was concerned about that. And throughout the trial I was trying to gauge or monitor your level of competency. And in every case the discussions that you and I had convinced me that you were tracking very well with what was going on, you understood the issues very clearly, and you were fully capable of assisting your attorney in defending the case. Had I felt otherwise, we wouldn't have completed the [trial]. That doesn't mean you don't have issues that have to be dealt with, but clearly you were competent as the law defines it. Better than competent in comparison to other people similarly situated.

RP (Apr. 25, 2012) at 42. McCurdy appeals.

## ANALYSIS

### A. COMPETENCY TO STAND TRIAL

McCurdy first contends that the trial court erred in finding that he had the ability to understand the nature of the proceedings against him and was able to assist in his defense. McCurdy further argues that the trial court had an obligation to hold a second competency hearing because of his conduct during the first day of trial. We disagree.

In Washington "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. "Incompetency" exists where a person "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15). Where there is reason to doubt a defendant's competency, the trial court must appoint an expert to evaluate the defendant and report its evaluation to the court. RCW 10.77.060(1)(a).

5

We review a trial court's determination of a defendant's competency to stand trial under an abuse of discretion standard. *State v. Sisouvanh*, 175 Wn.2d 607, 621-22, 290 P.3d 942 (2012). Under this standard, we will find error only when the trial court's decision "(1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.' " *Sisouvanh*, 175 Wn.2d at 623 (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). When a competency evaluation is involved, the trial court has discretion to accept or reject that evaluation. *Sisouvanh*, 175 Wn.2d at 623.

McCurdy relies on *State v. Swain*, 93 Wn. App. 1, 968 P.2d 412 (1998). In *Swain,* the trial court found Swain incompetent to stand trial because the expert testified that Swain's illness prevented him from understanding the proceedings or assisting in his defense. 93 Wn. App. at 9. Swain's incoherent, rambling testimony supported that conclusion. *Swain*, 93 Wn. App. at 9. His testimony also demonstrated that he did not understand the trial proceedings, the judge's role, or what the attorneys were there to do. *Swain*, 93 Wn. App. at 5-6. While he demonstrated some minimal understanding of the proceedings and at times was able to assist, the appellate court found no abuse of discretion. *Swain*, 93 Wn. App. at 9-10.

Here, the expert opinion was more ambivalent, informing the court that McCurdy's illness manifested itself in such a way as to *potentially* prevent him from assisting in his own defense. The trial court engaged in extensive colloquies with McCurdy and newly-appointed defense counsel assured the court that he and McCurdy were working together well. And McCurdy confirmed this. Further, those colloquies demonstrated McCurdy's understanding of trial procedures and legal concepts. Based on his discussions with McCurdy, the trial court

6

concluded that McCurdy was "[b]etter than competent in comparison to other people similarly situated." RP (Apr. 25, 2012) at 42. Under these circumstances, we find no abuse of discretion. The trial court did not (1) adopt a view that no reasonable person would take, (2) rest its decision on facts the record did not support, or (3) apply the wrong legal standard. *Sisouvanh*, 175 Wn.2d at 623.

In addition, while the prosecutor expressed his concern during the first day of trial that the trial court may wish to revisit the competency issue, the record does not demonstrate that the trial court abused its discretion in not doing so. The trial court observed that the problem was McCurdy's unwillingness to heed his attorney's advice. McCurdy was frustrated with defense counsel's failure to pursue certain defenses, interview certain witnesses, and test physical evidence. But his complaints in this regard reflect a disagreement regarding trial strategy, not McCurdy's incompetency. We find no abuse of discretion in the trial court's decision not to reevaluate McCurdy's competency during the trial.

B.     CONSTRUCTIVE POSSESSION

McCurdy argues that the State failed to prove the possessory element of the firearms and marijuana charges. He argues that at most he was merely a transient occupant at Bays's home and therefore the State's evidence was insufficient.

Evidence is sufficient to support a conviction if after viewing the evidence and all reasonable inferences from it in a light most favorable to the State, a rational trier of fact could find each element of the crime proved beyond a reasonable doubt. *State v. Homan*, 172 Wn. App. 488, 490-91, 290 P.3d 1041 (2012), *review denied*, 177 Wn.2d 1022 (2013). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

7

Possession may be actual or constructive. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). A person has actual possession when he or she has physical custody of the item and constructive possession when he or she has dominion and control over the item. *Jones*, 146 Wn.2d at 333. Whether a person had dominion and control over an item depends on the totality of the circumstances. *State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995). And a person's dominion and control over a premises allows the trier of fact to infer that the person has dominion and control over items in the premises. *State v. Shumaker*, 142 Wn. App. 330, 333, 174 P.3d 1214 (2007) (dominion and control of premises is one factor indicating constructive possession); *State v. Contabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996) (showing dominion and control raises rebuttable presumption of constructive possession).

The question here is whether McCurdy had dominion and control over the premises. We hold that the evidence was sufficient to prove that he did, and therefore that he had possession of the contents. Bays testified that she rented the room to Miles Twitter for the month of March 2011 for $425, and that no other person had been in the house for the entire month. She also testified that besides she and the landlord, only Twitter had a key to the residence. And she identified McCurdy in open court as her renter. Further, police officers found signs of current occupancy in the bedroom: including bedding, clothing, boxes, and a large tool box containing McCurdy's personal effects and firearms. The officers recovered tax and banking information, business letters, personal letters addressed to and written by McCurdy, pay stubs, travel documents, personal identification documents, and school work. This evidence is sufficient to show that McCurdy had dominion and control over the room he rented. *See State v. Tadeo-Mares*, 86 Wn. App. 813, 816, 939 P.2d 220 (1997) (defendant had constructive possession of the premises where he leased the apartment, shared the rent, and resided there).

8

McCurdy argues that there was less evidence here than in *State v. Alvarez*, 105 Wn. App. 215, 222, 19 P.3d 485 (2001). There, the police discovered a handgun during a search for drugs at a teenage hangout apartment. *Alvarez*, 105 Wn. App. at 217. They also discovered some of Alvarez's personal property in the same room as the handgun. *Alvarez*, 105 Wn. App. at 218. But because the evidence did not show that Alvarez had dominion and control of that room, the reviewing court held that the State had failed to show constructive possession and it reversed Alvarez's conviction. *Alvarez*, 105 Wn. App. at 223. We agree that the mere presence of personal possessions on the premises is not enough to show dominion and control. *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977). But here, unlike in *Alvarez*, there was evidence that McCurdy had dominion and control over the room.

Similarly, in *State v. Spruell*, a defendant was found in a house containing drugs. 57 Wn. App. 383, 387-88, 788 P.2d 21 (1990). The reviewing court determined the defendant did not have dominion and control of the drugs because no evidence connected the defendant to either the house or the cocaine. *Spruell*, 57 Wn. App. at 388. As in *Alvarez*, the State failed to show dominion and control of the premises. Here, there was sufficient evidence that McCurdy had dominion and control over the room.

The State produced sufficient evidence that McCurdy had dominion and control of the room he rented, which was sufficient to attribute ownership of the room's contents, i.e., the marijuana and firearms, to him. McCurdy's sufficiency claim fails.

No. 43386-9-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

PENOYAR, P.J.

SPEARMAN, J.

10