

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34777-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REESE MCKINLEY GROVES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Reese Groves appeals his convictions for unlawful possession of a firearm. Because sufficient evidence supports the convictions, we affirm.

## FACTS

This prosecution entails the burglary of Stephen Hall's residence and removal of firearms from the abode on January 5, 2016. Since defendant Reese Groves challenges the sufficiency of evidence to sustain his convictions for unlawful possession of a firearm, we view the evidence in the glow favoring the State. The evidence primarily comes from testimony or interviews of witnesses Heather Mortenson and Sarah Reed, acquaintances of Groves, which acquaintances law enforcement questioned after the burglary.

Stephen Hall owned and resided in a dwelling north of Benton City and situated on four acres of land. The remote home lay over the hill and far away from the county road.

Stephen Hall operated All American Barns, a construction company with its office in West Richland. West Richland and Benton City are bedroom communities for the Hanford project and lie outside Richland. When Hall lacked work for his employees, he occasionally dispatched one or more employees to his abode to perform odd jobs so that the employees would not lose income. Defendant Reese Groves previously worked for Hall and had performed tasks at Hall's residence. Hall advised employees of a hidden house key on his front porch near a shutter past the front door so a worker could access the residence's bathroom and kitchen. Hall, however, frequently did not lock his front door and does not believe he secured the door on the day of the burglary.

Stephen Hall stored multiple firearms in a display case and a separate gun safe in his Benton County residence's bedroom. He opened the gun safe with a key stowed in a nearby dresser drawer. The gun safe also housed a smaller fireproof safe, in which Hall stored thousands of dollars in one hundred dollar bills amassed over his lifetime.

We recite evidence from the narrative of Heather Mortenson. Mortenson owned a home in Richland and intermittently dated Reese Groves. Reese Groves, Benjamin Gregory, Sarah Reed, and Britney Davenport recurrently stayed at Mortenson's home. Reed also dated Groves. Mortenson also owned a two-door white convertible.

Heather Mortenson recounted that Reese Groves and Benjamin Gregory twice visited Stephen Hall's residence on January 5, 2016. The male pair journeyed once to the home with Sarah Reed. Groves and Gregory later returned to Hall's home with Britney Davenport.

The following evidence comes from the narrative of Sarah Reed. On January 5, Benjamin Gregory and she rode as passengers in Heather Mortenson's white two-door car driven by Reese Groves. Reed laid in the back seat of the car because of an illness attended to her heroin withdrawal. She thought the trio intended to purchase drugs, but they first went to Groves' mother's home near Benton City. Groves exited the car and briefly spoke with his mother.

According to Sarah Reed, Reese Groves drove the convertible past a residence he identified as the home of his mother's ex-husband. Groves stated that he disliked the gentleman and desired to burglarize his residence. Groves asked Reed to knock on the front door to discern if anyone answered, but she refused. Groves continued to drive beyond the home and maneuvered on isolated county roads near Benton City. Groves mentioned an acquaintance would not be home because he would be working at his West Richland business. When the trio arrived at the acquaintance's residence, Reed remained in the car while Groves and Benjamin Gregory walked toward the house. Five minutes later, both men returned to the car carrying boxes and firearms. Reed advised the two she did not want the firearms placed next to her in the back seat because of her felony

3

conviction. The duo deposited the guns in the car's trunk.

According to Sarah Reed, Reese Groves returned Reed, because of her illness, to Heather Mortenson's home in Richland. Reed slept the remainder of daylight. When Reed awoke, she spied a mass of one hundred dollar bills on a bed. Groves told Reed that he retrieved the bills that morning.

As part of an investigation, law enforcement officers corroborated details of Sarah Reed's story through multiple witnesses. Lorella Dutt, Groves' mother, recalled Groves visiting her house on or near January 5 in a light colored car with a male seated in the front seat and a female situated in the back seat. Daniel Dutt, Lorella Dutt's ex-husband, knows Stephen Hall and introduced Groves to Hall in order to help Groves find a job. Dan Dutt's home lies a mile and a half from Hall's residence in Benton City.

We now move to testimony of victim Stephen Hall. When Hall returned home the evening of January 5, 2016, he entered through the front door and passed through the living room, dining room, den, and kitchen. As Hall entered his bedroom, he spotted open bureau drawers, an unfastened display case, and an unlocked gun safe. Someone had purloined six of Hall's seven long guns and $15,000 in $100 bills.

Stephen Hall returned to his front porch and observed shoeprints from someone else's shoes in the blanket of snow near the residence's front door. One set of shoeprints traveled past the front door and continued to the shutter, where he had secreted the house key. The key was missing. That evening a deputy sheriff photographed the shoeprints

4

and tire tracks in the snow. The deputy measured the shoeprints as created by size 11 or 11 ½ shoes.

Officers contacted Benjamin Gregory, who confessed he participated in the burglary. Gregory, however, would not identify his cohorts in the crime because his code of conduct precluded snitching. Gregory disclosed the location of five of the stolen firearms, where officers subsequently recovered the quintet of guns.

PROCEDURE

The State of Washington charged Reese Groves with residential burglary, theft in the first degree, six counts of theft of a firearm, and six counts of unlawful possession of a firearm in the second degree. The State charged Groves with possessing the firearms both directly and as an accomplice to Benjamin Gregory. Groves' partner, Gregory, pled guilty to residential burglary, three counts of theft of a firearm, and one count of unlawful possession of a firearm in the second degree.

Reese Groves stipulated to a previous felony conviction. At trial, Stephen Hall identified each of the five recovered firearms as having been stolen from his residence. Law enforcement never found the sixth stolen firearm, a 1993 Remington 700 30.06.

Benjamin Gregory testified at trial that he knew Reese Groves, Sarah Reed, and Heather Mortenson. Gregory averred that he had not entered Stephen Hall's residence before the day of the burglary and he did not know Hall. Gregory declared that he did not conceive of the plan to burglarize the residence and that someone accompanied him

5

inside the house. Gregory identified a pair of size 11 boots which he wore during

January 2016. An officer ink-rolled the boots and found the tread consistent with

shoeprints left in the snow at Hall's residence.

In closing argument, the State explained to the jury that accomplice liability:

> tells you that you are guilty of a crime if you do things like solicit someone to do it. You aid or you encourage or you help in planning. You're guilty just like someone who actually does it.

Report of Proceedings at 216. The State argued that it need not prove, in order to convict

on unlawful possession of a firearm, that Reese Groves traveled to Stephen Hall's

residence or that Groves carried the guns to the car. The State contended that the jury

only needed to find that Groves participated in planning the burglary. Groves did not

object to the State's line of argument. The jury convicted Groves as charged.

LAW AND ANALYSIS

On appeal, Reese Groves challenges his convictions for unlawful possession of a

firearm in the second degree. He argues insufficient evidence supports the convictions.

Evidence suffices for a conviction if a rational trier of fact could find each element

of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d

628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v.

Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). A claim of insufficiency admits the

truth of the State's evidence and all inferences that reasonably can be drawn therefrom.

*State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). The reviewing court

6

considers both circumstantial and direct evidence as equally reliable. *State v. Thomas*, 150 Wn.2d at 874. Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

To convict Reese Groves of unlawful possession of a firearm in the second degree, the State needed to establish that: (1) on or about January 5, 2016, Groves knowingly possessed or controlled a firearm, (2) Groves had previously been convicted of a felony, and (3) the possession or control of the firearm occurred in Washington State. RCW 9.41.040(2)(a)(i). Groves only challenges evidence necessary to show possession or control of a firearm.

Possession of a firearm can be actual possession or constructive possession. *State v. Manion*, 173 Wn. App. 610, 634, 295 P.3d 270 (2013). Actual possession means that the person charged with possession had personal custody or actual physical possession. *State v. Manion*, 173 Wn. App. at 634. Actual possession may be proved by circumstantial evidence. *State v. Manion*, 173 Wn. App. at 634. Passing control does not constitute possession. *State v. Davis*, 182 Wn.2d 222, 237, 340 P.3d 820 (2014).

Constructive possession can be established by showing the defendant had dominion and control over the firearm or over the premises where the firearm was found. *State v. Lee*, 158 Wn. App. 513, 517, 243 P.3d 929 (2010). To determine constructive possession a court examines whether, under the totality of the circumstances, the defendant exercised dominion and control over the item in question. *State v. Partin*, 88

7

Wn.2d 899, 906, 567 P.2d 1136 (1977).  While the ability to immediately take actual

possession of an item can establish dominion and control, mere proximity to the item by

itself cannot.  *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).  This dominion

and control need not be exclusive.  *State v. Tadeo-Mares*, 86 Wn. App. 813, 816, 939

P.2d 220 (1997). On appeal, Reese Groves argues that, at most, he transitorily controlled

the stolen firearms.  Therefore, according to Groves, he never actually or constructively

possessed the firearms under law.  Groves highlights the holding in *State v. Callahan*, 77

Wn.2d 27, 459 P.2d 400 (1969).

     *State v. Callahan* entails possession of a controlled substance, not a firearm.

Assuming the rules of possession apply identically to both crimes, *Callahan* diverges

significantly from the facts shown by the State in Reese Groves' prosecution.  Officers

found drugs on the houseboat rented by Cheryl Callahan.  Defendant Michael Hutchinson

did not live on the boat, but officers found the drugs near a desk at which Hutchinson sat.

Hutchinson owned guns, two narcotics books, and broken drug scales located on the boat.

He admitted to handling the unlawful drugs earlier in the day.  The high court ruled that

the State presented insufficient evidence to convict.

     Direct evidence presented at trial showed more than passing control of the stolen

firearms by Reese Groves.  Sarah Reed testified she sat in the car at Stephen Hall's home,

while Reese Groves and Benjamin Gregory entered the home.  Five minutes later Reed

saw Groves and Gregory return carrying boxes and firearms.  During trial, Reed

specifically identified Groves as carrying a gun. Groves and Gregory were going to place guns and boxes in the backseat with Reed, but she told them she did not want the guns next to her in the backseat because she was a convicted felon. Groves and Gregory then placed the guns into the trunk. Groves drove the car, with the guns in the trunk, for miles. As the driver, Groves would possess the ability to preclude others from control of the firearms. Thus, sufficient evidence convicted Groves.

## CONCLUSION

We affirm Reese Groves' convictions for unlawful possession of a firearm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, C.J.

9