FILED
8/2/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81019-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TERRELL TRAYSHAWN JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Terrell Trayshawn Johnson argues insufficient evidence supports his conviction for one count of first degree unlawful possession of a firearm. In a statement of additional grounds for review (SAG), Johnson claims the trial court erred in denying his motion to suppress evidence of a warrantless search and in admitting opinion testimony at trial. Johnson also contends his trial counsel was ineffective by not introducing other suspect evidence. We affirm.

FACTS

The Seattle Police Department anti-crime team (ACT) investigates crimes, conducts "tactical operations," and coordinates arrests of violent suspects. It also searches for people with outstanding arrest warrants. In April 2019, ACT officers were searching for Johnson.

On April 5, 2019, plainclothes ACT officers learned that Johnson was at his mother's home in Rainier Valley. They believed Johnson might be armed.

When police arrived at the house, they saw parked out front the white Chrysler Sebring with California license plates they knew Johnson sometimes drove.

Officers watched the car for about 15 minutes[1] before seeing Johnson leave the house and get in the driver's seat. Johnson was wearing a black "beanie" hat, a tan shirt under a black North Face fleece jacket, and tan pants. Officers did not see Johnson carrying a gun. Johnson sat in the car for about 10 minutes[2] before driving away.

Uniformed officers tried to stop Johnson. Johnson briefly stopped the car but as an officer approached on foot, Johnson backed up and drove away. Johnson then turned onto a residential street and began driving at "a very high rate of speed." Officers activated their emergency lights and followed Johnson for about a mile. Johnson crashed into an unoccupied parked car and a school fence, got out of the car, and ran.

Police lost sight of Johnson for "less than a minute" during the car chase. But when they reached the crash site, bystanders pointed them in the direction Johnson ran. Lamour Burke, who lived nearby, told the officers he saw a man wearing "tan sweats" and "a black shirt" running a half-block away from the car just after it crashed. Officers quickly saw Johnson[3] running through alleys and yards, but he was wearing only a "tan . . . jogging suit." At times during the foot chase, officers lost sight of Johnson, but for only a moment. Police caught

---

[1] One officer estimated they watched the car for 10 to 15 minutes. Another officer said it was 35 to 45 minutes.

[2] Another officer testified Johnson stayed in the car for 30 minutes.

[3] Officers did not see him get out of the car but saw him running "[w]ithin seconds" after the crash.

Johnson about a block and a half from where he crashed the car. When police arrested Johnson, he was wearing a "tan brown jogging suit." He was not carrying a firearm.

Because police believed Johnson was armed, they brought K-9 Officer Blitz to the scene to search for a firearm. The dog and his handler arrived within 20 minutes of Johnson's arrest and first alerted on Johnson's black beanie. Officer Blitz found the beanie on the ground just outside the driver's side door of the crashed Chrysler. After searching the surrounding area for 6 to 7 minutes, Officer Blitz alerted on a black North Face jacket hanging on a backyard fence near where Johnson had run. His handler testified that Officer Blitz's strong reaction during the search suggested the jacket had not been there long and was still "saturated with fresh human odor." Officers found a "wall plug charger," some cash, and a loaded 9 mm Remington handgun in the jacket pockets.

Officers later identified the jacket as the same one they saw Johnson wearing when he left his mother's home and got into the Chrysler. When tested, the gun did not reveal any usable fingerprints. Detectives did not test the jacket or the charger for fingerprints and tested none of the items for DNA.[4]

Police obtained a warrant to search the Chrysler. The search revealed boxes of 9 mm ammunition in the driver-side door and front center console, an unfired 9 mm bullet in the center crease of the backseat, a loaded magazine for a 9 mm semi-automatic Remington pistol under the front passenger seat, and a box of .40 caliber ammunition in the trunk. Officers also discovered an

---

[4] Deoxyribonucleic acid.

3

identification card under the back passenger seat behind the driver's seat for a person named Dominique Freman and credit and debit cards bearing several other names. A bill of sale inside the Chrysler suggested Aiden Riche sold the car to Aaron Tinselly a few weeks earlier. Police did not find any items identifying Johnson in the car.

The State charged Johnson with attempting to elude a pursuing police vehicle and first degree unlawful possession of a firearm.

Johnson moved to suppress evidence pretrial, alleging police conducted an unlawful search of the jacket.[5] The trial court denied the motion, ruling Johnson abandoned the jacket. At trial, Johnson conceded he was guilty of the eluding charge but argued the State did not prove beyond a reasonable doubt that he knowingly possessed a firearm. A jury convicted Johnson on both charges and the trial court sentenced him to a standard-range sentence.

Johnson appeals the unlawful possession of a firearm conviction.

ANALYSIS

Sufficiency of Evidence

Johnson argues the evidence at trial was insufficient to prove he possessed a gun because "[n]ot a single person, law enforcement or civilian, saw [him] possessing the handgun." We disagree.

We review a sufficiency of the evidence challenge de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Due process requires the State to prove each element of the charged crime beyond a reasonable doubt. State v.

---

[5] The record refers to the North Face item intermittently as a "jacket" and a "sweatshirt." We use the term "jacket" for consistency.

4

Baeza, 100 Wn.2d 487, 488, 670 P.2d 646 (1983); State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). In considering a challenge to the sufficiency of evidence, we examine the facts in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Such a challenge admits the truth of the State's evidence and all reasonable inferences from it. Salinas, 119 Wn.2d at 201.

Circumstantial evidence is as equally reliable as direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And we defer to the fact finder's decision in our review. State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). "We do not consider 'questions of credibility, persuasiveness, and conflicting testimony.' " Davis, 182 Wn.2d at 227 (quoting In re Pers. Restraint of Martinez, 171 Wn.2d 354, 364, 256 P.3d 277 (2011)).

The two elements of the crime of unlawful possession of a firearm are (1) knowingly possessing a firearm and (2) having a prior "serious offense" conviction. RCW 9.41.040(1)(a); State v. Nielsen, 14 Wn. App. 2d 446, 452, 471 P.3d 257 (2020), review denied, 196 Wn.2d 1035, 478 P.3d 94 (2021). Because Johnson stipulated a court had convicted him of a serious offense and he received notice that he was ineligible to possess firearms, the only issue at trial was whether he knowingly possessed a gun.

The State may prove possession by showing a defendant had actual or constructive possession of a firearm. State v. Manion, 173 Wn. App. 610, 634,

295 P.3d 270 (2013). A person actually possesses something if it is in his physical custody. State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Constructive possession can be established by showing the defendant had " 'dominion and control' " over the firearm. Manion, 173 Wn. App. at 634[6] (quoting State v. Lee, 158 Wn. App. 513, 517, 243 P.3d 929 (2010)). Dominion and control need not be exclusive. State v. Tadeo-Mares, 86 Wn. App. 813, 816, 939 P.2d 220 (1997). But the State must prove more than a passing control; it must prove actual control. State v. Staley, 123 Wn.2d 794, 801, 872 P.2d 502 (1994). The fact finder determines whether one has actual control under the totality of the circumstances. Staley, 123 Wn.2d at 802.

Here, the record shows police saw Johnson get into a car wearing a black beanie cap and a black North Face jacket over a tan shirt and tan pants. When confronted by police officers, Johnson sped away and crashed into a parked car and a school fence. Neighbor Burke saw a man running a half block from the crash site wearing "tan sweats" and a "black shirt." Johnson ran through backyards and alleys until police caught him. When police arrested Johnson, he was wearing just a tan tracksuit. Officers found Johnson's beanie cap on the ground just outside the crashed car and his black North Face jacket hanging on the fence of a backyard near where he had run. The jacket was dry even though the surrounding area was wet. A police canine tracked Johnson's scent from his beanie cap to the jacket. A loaded 9 mm Remington handgun was in the jacket pocket. Inside the car Johnson was driving, police found boxes of 9 mm

---

[6] Internal quotation marks omitted.

6

ammunition and a loaded magazine for a 9 mm semi-automatic Remington pistol. Considering the evidence in the light most favorable to the State, a reasonable trier of fact could find beyond a reasonable doubt that Johnson was wearing the black North Face jacket and possessed the Remington handgun.

Statement of Additional Grounds

Johnson filed a SAG, arguing the trial court erred in denying his motion to suppress evidence based on an unlawful search of the jacket. Johnson also claims the trial court erred by allowing officers to testify that he drove recklessly and contends his attorney was ineffective because he did not present other suspect evidence.

A. Suppression of Evidence

"We review conclusions of law in an order pertaining to suppression of evidence de novo." State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), abrogated on other grounds by Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, L. Ed. 2d 132 (2007). We consider unchallenged findings of fact as verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Johnson argued below that officers unlawfully searched his jacket "incident to arrest" where he "was not wearing [it] at the time of the search but he had not abandoned it." In his motion, Johnson admitted he dropped the jacket while fleeing but claimed it was inadvertent and not an intentional surrender of the item.

Police may search voluntarily abandoned property without a warrant. State v. Reynolds, 144 Wn.2d 282, 287, 27 P.3d 200 (2001). This is because a

criminal defendant has no reasonable expectation of privacy in abandoned items. Reynolds, 144 Wn.2d at 287-88. We determine whether an individual voluntarily abandoned property based on actions and intent. State v. Dugas, 109 Wn. App. 592, 595, 36 P.3d 577 (2001). We may infer intent from words spoken, acts done, and other objective facts and should consider all the relevant circumstances at the time of the alleged abandonment. Dugas, 109 Wn. App. at 595. The defendant bears the burden of showing he had an actual, subjective expectation of privacy and that his expectation was objectively reasonable. State v. Evans, 159 Wn.2d 402, 409, 150 P.3d 105 (2007).

A critical factor in determining whether someone has abandoned property is the status of the area where the item was located. State v. Hamilton, 179 Wn. App. 870, 885, 320 P.3d 142 (2014). "Generally, no abandonment will be found if the searched item is in an area where the defendant has a privacy interest." Hamilton, 179 Wn. App. at 885. Here, officers found Johnson's jacket "hanging over a [metal] fence" near a tool shed in a yard Johnson passed through while fleeing police. Johnson had no privacy interest in the area. We agree with the trial court that Johnson relinquished his reasonable expectation of privacy by discarding the jacket. The warrantless search of Johnson's abandoned jacket was lawful.

B. Opinion Testimony

Johnson claims the trial court "erroneously allowed police officers to testify that [he] drove recklessly or eluded the police."

8

We review a trial court's evidentiary rulings for an abuse of discretion. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). Questions of relevancy and the admissibility of testimonial evidence are within the sound discretion of the trial court. In re Welfare of Shope, 23 Wn. App. 567, 569, 596 P.2d 1361 (1979); Roper v. Mabry, 15 Wn. App. 819, 822, 551 P.2d 1381 (1976); State v. Temple, 5 Wn. App. 1, 4-5, 485 P.2d 93 (1971). We will reverse a trial court's rulings on those issues only if there is "a reasonable possibility that the testimony would have changed the outcome of trial." State v. Fankhouser, 133 Wn. App. 689, 695, 138 P.3d 140 (2006).

At trial, the prosecutor asked an officer to describe Johnson's driving during the pursuit. He responded that Johnson drove "reckless[ly]." Defense counsel objected to the testimony as an improper legal conclusion. The trial court sustained the objection and struck the response but suggested the State lay a foundation. When then asked to describe what actions he saw, the officer testified that "the driver of the vehicle had increased speed, was driving erratically and with a disregard for the safety of any pedestrians or other vehicles in the area." Defense counsel again objected and the trial court again sustained the objection and struck the improper portion of the response. The officer then testified without objection that Johnson was traveling at an "increasing speed" that the officer could not "keep up with" while also clearing intersections where pedestrians and other cars might be present.

We presume that jurors follow a trial court's instructions to disregard improper testimony. State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013).

9

Because the trial court sustained Johnson's objections at trial and struck the improper testimony, Johnson identifies no error. Johnson did not request a curative instruction and cites no authority that the court must offer one sua sponte.

### C. Ineffective Assistance of Counsel

Johnson claims his attorney was ineffective because "he failed to research or know the relevant law on evidence of other suspects" and "did not admit other suspect evidence."

A successful ineffective assistance of counsel claim requires both deficient performance and a showing of prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

To admit other suspect evidence, a defendant "must establish a train of facts or circumstances as tend clearly to point out someone besides the defendant as the guilty party." State v. Strizheus, 163 Wn. App. 820, 830, 262 P.3d 100 (2011). Remote acts, disconnected and outside the crime itself, do not suffice. State v. Franklin, 180 Wn.2d 371, 380, 325 P.3d 159 (2014).

Johnson provides no evidence that his attorney was not fully informed about these legal requirements for introducing "other suspect" evidence.[7] Nor does he show that the evidence at trial pointed to someone other than him wearing the black North Face jacket where officers found a gun. At best, the

---

[7] We do not review matters outside the record on direct appeal. State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

evidence at trial suggested that people other than Johnson may have had access to the white Chrysler Sebring. And Johnson's attorney argued to the jury that "many other people had access to the car" and police found "nothing, not one item or anything that tied Mr. Johnson to that car." He urged the jury to consider also that "it's not unreasonable to think that someone else in the car if they were in the back passenger side could have gotten out quicker and run around the corner without anyone having seen." Johnson's attorney was not deficient.

We affirm Johnson's conviction for one count of first degree unlawful possession of a firearm.

_____
Brennan, J.

WE CONCUR:

_____         _____
Coburn, J.                                 Dwyer, J.