IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81111-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CLARENCE LERNELL DARDEN, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Clarence Lernell Darden argues insufficient evidence supports his conviction for one count of first degree unlawful possession of a firearm. We affirm Darden's conviction but remand to the trial court to recalculate his offender score and resentence him considering our Supreme Court's decision in State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021).

FACTS

On March 29, 2017, members of the Seattle Police Department (SPD) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) gathered outside a Madison Valley home that Darden co-owned with his sister. SPD sought to arrest Darden for outstanding warrants and the ATF was familiar with Darden as both a perpetrator and victim involved in several gun violence crimes.

Darden was inside the house with his girlfriend Qiana Tyeskey when officers first arrived. A short time later, Darden walked outside wearing a red shirt under a sleeveless jersey with green and red stripes and a Snoopy

caricature on it.  As Darden walked down the driveway and approached the driver's side door of a car, police pulled in behind him and blocked his exit. Darden "took off running."  He fled along the side of the house toward the backyard.  SPD detective Greg Tomlinson saw Darden reach toward his waistband as he approached the corner of the house leading into the backyard. The detective described the movement as a "high elbow position" where Darden's elbow came up toward his waistband.  Believing Darden may be armed, police approached the corner "in . . . a tactical way" to "maintain [their] cover" and "address" the potential threat.

When Detective Tomlinson rounded the corner of the house, Darden was not in the backyard.  Police looked around the backyard area and "peeked over the fences" to see if they could spot him.  About "15 seconds or so" after entering the backyard, Detective Tomlinson saw a Glock handgun lying in the grass.  The gun was mostly dry with "some dirt that impacted onto part of it" near a "fresh divot" consistent with having been "thrown or tossed" onto the grass.[1]  Officers did not see Darden with the gun or see him throw it away during the chase.

About 10 minutes later, officers found Darden hiding in a neighbor's shed, but he was wearing a white shirt.  Retracing Darden's route from the backyard of his house to the shed, police found Darden's discarded Snoopy jersey, his red shirt, and a bulletproof vest.

---

[1] It had rained that morning and the days prior and the ground was wet.  Detective Tomlinson testified that there were toys in the same area of the yard that looked "weathered and aged" but the gun "did not looked weathered."  Other officers corroborated Detective Tomlinson's testimony.

Officers returned to Darden's home to speak with Tyeskey. While in the home, police saw an ammunition magazine for a rifle on the kitchen counter. After obtaining a search warrant, police found more "gun magazines, a holster," "various calibers of ammunition," and "papers of dominion and control"[2] throughout the kitchen.

Police later determined the Tukwila Police Department reported the gun found in Darden's backyard stolen. A latent print examiner did not recover any fingerprints from the weapon and police elected not to seek more testing. Detective Tomlinson testified he "was confident enough, due to the condition of the firearm on the ground and Mr. Darden's hand movements, as well as the freshness of the recovery, that the firearm did not need to be DNA[3] tested."

Police interviewed Darden after his arrest. Darden denied knowledge of the gun or the bulletproof vest. But he acknowledged he had "just been shot at" and "ever since that happened, I've been laying low."

The State charged Darden with one count of first degree unlawful possession of a firearm. Darden waived his right to a jury trial and the case proceeded to a bench trial.

At trial, Darden testified that he and his sister inherited the house from their parents and planned to use it as a rental. They hired a property manager and arranged for a friend, Dina Reynoso, to clean the house before and after rentals. Darden also admitted that he "fabricated the truth" about some facts

---

[2] Officers found mail addressed to Darden at the home's address from the Department of Social and Health Services, Virginia Mason Health System, and the Washington State Department of Licensing.

[3] Deoxyribonucleic acid.

during the interview with detectives after his arrest. He testified that he was wearing a bulletproof vest the day of his arrest and that he removed it and other clothing items as he ran from police.

Reynoso testified for Darden at the trial. She said that a week or so before officers arrested Darden, she was cleaning his house and saw what she thought was a toy gun in the backyard. But she "never went near it" for safety reasons because Darden told her "squatters" used the backyard and she saw what she believed were needle caps in the same area as the gun.[4] To Reynoso, the gun looked like "one of those old Western kind of revolver-looking" pistols "covered in dirt or rust."

Darden also called Tyeskey as a witness at trial. On March 29, 2017, Darden picked up Tyeskey from the airport. She testified that the two drove to his house, where they had sex. Tyeskey said she did not see Darden with a gun when he took off his clothes or as he redressed. She then began to cook a meal and Darden left the house to go to the grocery store.[5] She did not see Darden again until after his arrest.

The trial court found Darden guilty of unlawfully possessing a firearm. The court issued written findings of fact and conclusions of law. The judge determined that Darden was not credible and that he appeared to have

---

[4] Detective Tomlinson did not testify that he saw any needle caps in Darden's backyard.

[5] Darden's recollection of what he needed at the store changed over time. He told detectives during their interview that he planned to buy milk, but at trial, he testified Tyeskey needed aluminum foil. Tyeskey testified that Darden was supposed to buy butter.

encouraged Reynoso and Tyeskey to lie as well.[6]  At sentencing, the trial court imposed a prison-based special drug offender sentencing alternative.

Darden appeals.

ANALYSIS

Sufficiency of Evidence

Darden argues the evidence at trial was "wholly equivocal" and "insufficient to prove unlawful possession of a firearm beyond a reasonable doubt."  We disagree.

Following a bench trial, we limit our review to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law.  State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).  "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise.  Stevenson, 128 Wn. App. at 193.  We treat unchallenged findings of fact as verities on appeal.[7]  State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).  We review a sufficiency of the evidence challenge de novo.  State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

Due process requires the State prove each element of the charged crime beyond a reasonable doubt.  State v. Baeza, 100 Wn.2d 487, 488, 670 P.2d 646

---

[6] The trial court referenced Darden's testimony that he sent $500 to each of them as payment "for his trial clothes."

[7] Darden challenges several of the trial courts' findings of fact.  While labeled by the court as findings, all but one are factual inferences or conclusions of law.  When the trial court mislabels a conclusion of law as a finding of fact, we review it as a conclusion of law.  State v. Niedergang, 43 Wn. App. 656, 659, 719 P.2d 576 (1986).  As a result, we treat Darden's assignments of error as challenges to the sufficiency of evidence supporting his conviction.

(1983); State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). In considering a challenge to the sufficiency of evidence, we examine the facts in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Such a challenge admits the truth of the State's evidence and all reasonable inferences from it. Salinas, 119 Wn.2d at 201.

The two elements of the crime of unlawful possession of a firearm are (1) knowingly possessing a firearm and (2) having a prior "serious offense" conviction. RCW 9.41.040(1)(a); State v. Nielsen, 14 Wn. App. 2d 446, 452, 471 P.3d 257 (2020), review denied, 196 Wn.2d 1035, 478 P.3d 94 (2021). Because Darden stipulated that a court previously convicted him of a serious offense, the only issue at trial was whether he knowingly possessed a firearm.

The State may prove possession by showing a defendant had actual or constructive possession of a firearm. State v. Manion, 173 Wn. App. 610, 634, 295 P.3d 270 (2013). A person actually possesses something if it is in his physical custody. State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Constructive possession can be established by showing the defendant had " 'dominion and control' " over the firearm or over the premises where the firearm was found. Manion, 173 Wn. App. at 634[8] (quoting State v. Lee, 158 Wn. App. 513, 517, 243 P.3d 929 (2010)). When a person has dominion and control over

---

[8] Internal quotation marks omitted.

a premises, it creates a rebuttable presumption that the person has dominion and control over items on the premises. State v. Cantabrana, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). But dominion and control is not exclusive. State v. Tadeo-Mares, 86 Wn. App. 813, 816, 939 P.2d 220 (1997). The State must prove more than a passing control; it must prove actual control. State v. Staley, 123 Wn.2d 794, 801, 872 P.2d 502 (1994). Whether someone has actual control is determined under the totality of the circumstances. Staley, 123 Wn.2d at 802.

Here, the trial court's findings support its conclusion that Darden "actually possessed" a firearm on March 29, 2017. See Manion, 173 Wn. App. at 635. The record shows officers saw Darden leaving a home he co-owns with his sister wearing distinctive clothing. Darden fled from the police. As he ran into his backyard, officers saw Darden reach toward his waistband in a movement that made them suspect he had a weapon.[9] Seconds later, officers found a gun in the backyard near where Darden ran. The gun was mostly dry and not weathered even though it had recently rained "heavily" and the grass and surrounding items were wet. Police also found Darden's distinctive red shirt, Snoopy jersey, and a bulletproof vest along his path of travel. Darden admitted that he discarded these items as he fled. After his arrest, Darden told Detective Tomlinson that he had been "laying low" because he had "just been shot at." A search of Darden's home produced ammunition magazines and body armor.

---

[9] Darden challenges this finding of fact. But Detective Tomlinson testified he saw Darden reach toward his waistband with a "high elbow position, because the elbow comes up towards the waistband," "above his forearm." Substantial evidence supports the finding.

Darden argues the "evidence failed to show that [he] possessed the handgun" because it was only "found in the grass in the vicinity of where the police officers chased him" and the police did not find any DNA or fingerprints on the gun. And pointing to the testimony of Reynoso and Tyeskey, Darden contends he presented "multiple explanations for [the gun's] presence," including that it had been in the backyard for days, maybe left by squatters. But the court as the trier of fact can rely on circumstantial evidence to determine that Darden possessed a gun. See State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (circumstantial evidence is as equally reliable as direct evidence). And the court resolved any conflicting evidence against Darden to conclude that his explanations and those of his witnesses were not credible. We do not review credibility determinations. State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Under the totality of circumstances when viewed in a light most favorable to the State, a reasonable trier of fact could find beyond a reasonable doubt that Darden actually or constructively possessed a firearm. We affirm his conviction.

Offender Score

Darden challenges his offender score under Blake because it includes "several convictions for possession of a controlled substance."[10] The State concedes that the court must resentence Darden with a corrected offender score. We accept the concession and remand for recalculation of Darden's offender score and resentencing.

---

[10] In Blake, our Supreme Court held the strict liability drug possession statute former RCW 69.50.4013 (2017) unconstitutional. Blake, 197 Wn.2d at 186.

We affirm Darden's conviction for first degree unlawful possession of a firearm but remand to the trial court for resentencing consistent with <u>Blake</u>.

_Brennan, J_

WE CONCUR:

_Mann, C.J._